FILED
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS
Nov 1, 2017
OFFICE OF THE CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**HAMID ADELI**                                                                 **PLAINTIFF**

vs.                             Case No. __17-5224-PKH__

**SILVERSTAR AUTOMOTIVE, INC.**
**d/b/a MERCEDES-BENZ OF**
**NORTHWEST ARKANSAS**                                              **DEFENDANT**

## COMPLAINT

COMES NOW, Plaintiff Hamid Adeli, by the undersigned counsel, and for his Complaint against SILVERSTAR AUTOMOTIVE, INC. d/b/a MERCEDES-BENZ OF NORTHWEST ARKANSAS ("the Mercedes Dealership"), on the grounds and in the amount as set forth:

### PARTIES

1. Plaintiff Hamid Adeli is a citizen and resident of Fairfax, Virginia.

2. Defendant Silverstar Automotive, Inc. d/b/a Mercedes-Benz of Northwest Arkansas is an Arkansas corporation engaged, *inter alia*, in the business of selling used vehicles to the public on a retail basis and has its principal place of business in Bentonville, Arkansas.

### JURISDICTION AND VENUE

3. This Court has jurisdiction because Defendant is incorporated in Arkansas; has consented to jurisdiction by registering to conduct business in the state; maintains sufficient minimum contacts in Arkansas; and otherwise intentionally avails itself of the markets within Arkansas through promotion, sale, marketing and distribution of vehicles, which renders exercising jurisdiction by this Court proper and necessary as Defendant is "at home" in Arkansas.

4. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims of Plaintiff occurred in this District and because Defendant is at home in this District.

5. Prior to commencement of this action, Plaintiff, through communications by counsel, sought an informal resolution of this matter, but never received a response from Defendant.

## FACTUAL BACKGROUND AND SUBSTANTIVE ALLEGATIONS

### *THE MERCEDES DEALERSHIP PITCHES THE VEHICLE AS "TURN-KEY" AND IN "EXCELLENT WORKING CONDITION"*

6. On November 7, 2016, Mr. Adeli contacted the Mercedes Dealership based on an ad it placed at AutoTrader and Cars.com, listing a 2007 Ferrari F430, VIN ZFFEW58A270154252 (the "Vehicle").

7. These ads–and all others–presented the Vehicle as "turn-key" with a full pre-purchase inspection ("PPI") having already been performed and all identified problems remedied.

8. The Vehicle was also described as needing no additional service and as having only two prior owners.

9. When Mr. Adeli called the Mercedes Dealership he spoke with an authorized dealer named Cole, who confirmed the PPI was performed by Boardwalk Ferrari of Texas and that all required repairs and maintenance had been completed.

10. Cole disclosed that the owner had not addressed an issue with a tire pressure monitor system sensor, but said that everything else had been fixed.

11. In later interactions with Cole as well as sales team members Michael Sloan and Josh Guest, these authorized representatives of the Mercedes Dealership routinely stressed that

everything on the PPI had been addressed and that the Vehicle was in "excellent working condition" and "needed nothing."

### MR. ADELI PURCHASES THE VEHICLE AND HAS IT DELIVERED

12. Based on the Mercedes Dealership's representations, Mr. Adeli purchased the Vehicle and the parties agreed on a price of $90,000. Mr. Adeli made the full payment on November 22, 2016.

13. Less than a week later, the Mercedes Dealership delivered the Vehicle to Mr. Adeli in Tysons Corner, Virginia.

### THE VEHICLE IS IN A DANGEROUS, DEFECTIVE CONDITION, NECESSITATING THOUSANDS OF DOLLARS IN REPAIRS

14. When driving the Vehicle home, which was less than four miles from the delivery location, there was a clear rough engine noise akin to a knocking or tapping sound.

15. Upon arrival, there was a potent gasoline smell emanating from the Vehicle. Overnight the gasoline smell worsened, permeating the garage and the interior of the home.

16. Mr. Adeli promptly notified Mr. Guest of the smell that same night and, early in the morning, Mr. Guest replied they had not noticed a gasoline smell but that they could "possibly offer assistance" toward the cost of any necessary repairs.

17. Mr. Guest added that Mr. Adeli retained discretion to determine the repair shop to have the Vehicle inspected, and that the dealership would "support whatever decision you are most comfortable with."

18. For safety reasons, particularly related to the smell of gasoline, Mr. Adeli had the Vehicle towed to Competizione and Sports Cars of Maryland for inspection.

19. At Competizione, two Ferrari-certified master technicians identified a host of problems with the Vehicle that the PPI would have turned up as well. For example, Competizione found a leaking fuel pump on the driver's side, which had created a dangerous condition due to the leaking fuel's proximity to exhaust and high heat, which could lead to a fire.

20. After several exchanges with Mr. Guest, including an offer Mr. Adeli of abundant visual evidence of the problems with the Vehicle yielded by the inspection, Mr. Guest said that the prior owner had "paid for anything that would be a concern to someone" and that the Mercedes Dealership had not seen any of the problems found by the Competizione inspection.

21. Since the initial inspection, there have been a series of repairs, with a number of impending, additional repairs yet to be completed. These repairs total $36,655.17.

22. In addition, when Mr. Adeli received the car title on December 12, 2016, it revealed a third owner who had driven the Vehicle for an additional approximately 2,500 miles, contradicting the representation of the dealership there had only been two owners. This owner had not reregistered the Vehicle, so the new owner had not shown up on a Carfax report commissioned by Mr. Adeli.

23. The dealership has chosen to not take responsibility for its numerous material misrepresentations and omissions to Mr. Adeli, and also refused to provide any financial relief, despite numerous requests.

## COUNT I

### VIOLATION OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT ("ADTPA")

24. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

25. The ADTPA is designed to protect consumers from deceptive, unfair and unconscionable trade practices. The ADTPA is a remedial statute, which is liberally construed in favor of consumers.

26. The Defendant's practices violate the following sections of the ADTPA:

   a. Advertising goods with the intent not to sell them as advertised, Ark. Code Ann. § 4-88-107(a)(3), by, among other things, falsely representing a full PPI had been performed, that all required repairs and maintenance had been completed, and that the Vehicle had only two prior owners.

   b. Employing bait and switch advertising with undisclosed conditions precedent to the purchase, Ark. Code Ann. § 4-88-107(a)(5), by, among other things, advertising the Vehicle as "turn-key" with a full PPI performed and all required repairs and maintenance completed when this was false.

   c. Knowingly taking advantage of a consumer reasonably unable to protect his interest because of ignorance or inability to understand the language of the agreement, Ark. Code Ann. § 4-88-107(a)(8), by, among other things, falsely representing a full PPI had been performed, that all required repairs and maintenance had been completed, and that the Vehicle had only two prior owners.

   d. Engaging in any unconscionable, false, and deceptive acts or practices in business, commerce or trade, Ark. Code Ann. §4-88-107(a)(10), by, among other things, falsely representing a full PPI had been performed, that all required repairs and maintenance had been completed, and that the Vehicle had only two prior owners.

27. The Defendant's conduct also violates Ark. Code Ann. §4-88-108 by suppressing material facts, and using deception or false pretenses by, among other things, stating a full PPI had been performed, that all required repairs and maintenance had been completed, and that the Vehicle had only two prior owners.

28. On information and belief, the Mercedes Dealership intended that Mr. Adeli rely upon the above-described misrepresentations and omissions.

29. The Defendant's conduct has caused Plaintiff to suffer actual damages or injury, including monetary loss, and to incur attorney's fees.

## COUNT II

## VIOLATION OF THE VIRGINIA CONSUMER PROTECTION ACT ("VCPA")

30. The sale of the Vehicle by the Mercedes Dealership to Mr. Adeli was a "consumer transaction" as defined in Section 59.1-198 of the Code of Virginia; the Vehicle constitutes "goods" as defined in Section 59.1-198 of the Code of Virginia; the Mercedes Dealership is a "supplier" as defined in Section 59.1-198 of the Code of Virginia; and Mr. Adeli is a "person" as defined in Section 59.1-198 of the Code of Virginia.

31. In the course of the sale transaction for the Vehicle, the Mercedes Dealership engaged in the following unfair and/or deceptive practices in violation of Section 59.1-200A of the Code of Virginia:

   a. Misrepresenting the certification of the Vehicle by, among other things, stating a full PPI had been performed and that all required repairs and maintenance had been completed;

   b. Misrepresenting the Vehicle had certain qualities, characteristics, uses, and benefits by, among other things, stating a full PPI had been performed, that all required repairs and maintenance had been completed, and that the Vehicle had only two prior owners;

   c. Misrepresenting the Vehicle was of a particular standard, quality, grade, and style by, among other things, stating a full PPI had been performed, that all required repairs and maintenance had been completed, and that the Vehicle had only two prior owners;

   d. Advertising or offering for sale a Vehicle that is defective and deteriorated without clearly and unequivocally indicating in the advertisement or offer for sale that the Vehicle is defective and deteriorated since, among other things, the advertisement did not disclose the various needed repairs, which total thousands of dollars;

      e.      Misrepresenting that repairs or services have been performed by, among other things, stating a full PPI had been performed and that all required repairs and maintenance had been completed;

      f.      Using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction by, among other things, stating a full PPI had been performed, that all required repairs and maintenance had been completed, and that the Vehicle had only two prior owners.

32. On information and belief, the Mercedes Dealership intended that Mr. Adeli rely upon the above-described misrepresentations and omissions.

33. The above-described actions were committed by the Mercedes Dealership willfully, wantonly, and with reckless disregard of the rights of Mr. Adeli, and as such violate Sections 59.1-200A. 1., 2., 5., 6., 7., 10., 14., and entitle Plaintiff to seek recovery of three times the actual damages, plus attorneys' fees and court costs, under Section 59.1-204 of the Code of Virginia.

## COUNT III

## BREACH OF EXPRESS WARRANTY

34. Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

35. Plaintiff has satisfied all conditions precedent to bringing this claim–to the extent any are imposed–including by putting the Mercedes Dealership on notice on multiple occasions of its breach and giving it an opportunity to remedy the breach.

36. The Mercedes Dealership expressly warranted, among other things, that a full PPI had been performed, that all required repairs and maintenance had been completed, and that the Vehicle had only two prior owners.

37. The Vehicle has needed, and still needs, several critical repairs that total thousands of dollars and the Vehicle has had three prior owners.

38. When the Mercedes Dealership made express warranties to Mr. Adeli, the Mercedes Dealership knew that the Vehicle needed several critical repairs that total thousands of dollars, and that the Vehicle had three prior owners. Nevertheless, the Mercedes Dealership made and continued to make, the above representations.

39. The Mercedes Dealership's conduct constitutes a breach of express warranty.

40. The preceding breach of express warranty at issue were substantial factors in causing damages to Mr. Adeli.

41. If Mr. Adeli had known the true facts about the Vehicle's condition, he would have considered that information material in his decision to purchase the Vehicle, and would not have purchased it.

42. Plaintiff is entitled to the full remedies provided under the Uniform Commercial Code as adopted by Arkansas and Virginia, as well as all other applicable remedies.

## COUNT IV

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

43. Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

44. The Vehicle is a "good" within the meaning of Arkansas and Virginia law.

45. A warranty that goods shall be merchantable and fit for the ordinary purposes for which such goods are used is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

46. As the seller of the Vehicle, the Mercedes Dealership is a "merchant" within the meaning of Arkansas and Virginia law.

47. The Mercedes Dealership's implied warranty that the Vehicle was merchantable was part of the basis of the bargain between the Mercedes Dealership and Mr. Adeli.

48. The Mercedes Dealership has not validly disclaimed, excluded, or modified the implied warranties and/or duties described herein, and/or any attempted disclaimer or exclusion of the same was and is ineffectual.

49. The Vehicle is not merchantable because the Vehicle had several safety defects and needed several critical repairs totaling thousands of dollars. Accordingly, the Vehicle was not of fair average quality within the description and not fit for the ordinary purposes for which such goods are used.

50. The Mercedes Dealership was provided actual notice of these issues multiple times by Mr. Adeli but did nothing.

51. As a direct and proximate result of the Mercedes Dealership's breach of the warranty of merchantability, Plaintiff has been damaged in an amount of no less than $36,655.17.

## COUNT V

### FRAUD

52. Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

53. Defendant induced Plaintiff to purchase the Vehicle by misrepresentation of material facts and omission of material facts by, among other things, stating a full PPI had been

performed, that all required repairs and maintenance had been completed, and that the Vehicle had only two prior owners.

54. Defendant knew its omissions were material and important.

55. Defendant intended to deceive Plaintiff and intended for him to rely on its representations, which he did, to his detriment, suffering damages.

56. Plaintiff is entitled to damages in an amount to be proven at trial.

## COUNT VI

## PUNITIVE DAMAGES

57. Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

58. Defendant knew or ought to have known, considering the circumstances, its conduct would naturally and probably result in damage, and it continued such conduct with malice or in reckless disregard of the consequences from which malice may be inferred.

59. Defendant intentionally pursued a course of conduct to cause damages.

60. Based on Defendant's conduct, an award of punitive damages is appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

    A.    For an order awarding Plaintiff actual, statutory, punitive, and/or any other form of damages provided by and under the statutes cited above;

    B.    For an order awarding Plaintiff restitution, disgorgement and/or other equitable relief provided by and under the statutes cited above or as the Court deems proper;

    C.    For an order awarding Plaintiff pre-judgment and post-judgment interest;

D. For an order awarding Plaintiff reasonable attorney fees and costs of suit, including expert witness fees; and

E. For an order awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

DATED: November 1, 2017

William T. Crowder, ABN 2003138
Corey D. McGaha, ABN 2003047
CROWDER MCGAHA, LLP
5507 Ranch Drive, Suite 202
Little Rock, AR 72223-0043
Phone: 501.205.4026
Fax: 501.367.8208
wcrowder@crowdermcgaha.com
cmcgaha@crowdermcgaha.com

Nicholas A. Migliaccio, Esq.*
Jason S. Rathod, Esq.*
MIGLIACCIO & RATHOD LLP
412 H Street N.E., Ste. 302
Washington, DC 20002-4336
Phone: 202.470-3520

* *Pro hac vice* admission to be sought