# EXHIBIT NO. 5

## Excerpts from Guest Deposition, June 13, 2018.

*Hamid Adeli v. Silverstar Automotive, Inc. d/b/a Mercedes-Benz of Northwest Arkansas*
Case No. 5:17-CV-05224-PKH
U.S. District Court, Western District of Arkansas, Fayetteville Division

**PLAINTIFF's MOTION FOR SANCTIONS**

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF ARKANSAS

HAMID ADELI,                          :     CIVIL ACTION
                                      :
        Plaintiff,                    :     No. 5:17-CV-05224-PKH
                                      :
v.                                    :
                                      :
SILVERSTAR AUTOMOTIVE, INC.           :
d/b/a MERCEDES-BENZ OF                :
NORTHWEST ARKANSAS,                   :
                                      :
        Defendant.                    :

---

ORAL DEPOSITION OF

JOSHUA ADAM GUEST

JUNE 13, 2018

---

ORAL DEPOSITION of JOSHUA ADAM GUEST, produced as a witness at the instance of the Plaintiff, and duly sworn, was taken in the above-styled and numbered cause on the 13th day of June, 2018, from 1:44 p.m. to 3:16 p.m., before Natanya Riddle, CCR in and for the State of Arkansas, reported by machine shorthand method, at Ball & Mourton, 3608 North Steele Boulevard, Suite 202, Fayetteville, Arkansas 72703, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record.



www.ArkansasRealtimeReporting.com

```
 1                    A P P E A R A N C E S

 2   FOR THE PLAINTIFF:
         Mr. Jason S. Rathod
 3       MIGLIACCIO & RATHOD, LLP
         412 H Street NE, Suite 302
 4       Washington D.C., 20002
         PHONE:  (202)470-3520    FAX:  (202)800-2730
 5       E-mail:  Jrathod@classlawdc.com

 6           -and-

 7       Mr. William T. Crowder
         CROWDER MCGAHA, LLP
 8       5507 Ranch Drive, Suite 202
         Little Rock, Arkansas 72223
 9       PHONE:  (501)205-4026    FAX:  (501)367-8208
         E-mail:  Wcrowder@crowdermcgaha.com
10
     FOR THE DEFENDANT:
11       Mr. David M. Donovan
         WATTS, DONOVAN & TILLEY, P.A.
12       200 River Market Avenue, Suite 200
         Little Rock, Arkansas 72201
13       PHONE:  (501)372-1406    FAX:  (501)372-1209
         E-mail:  David.donovan@wdt-law.com
14
     ALSO PRESENT:
15       Mr. Hamid Adeli

16

17

18

19

20

21

22

23

24

25
```



```
 1  A.   No, sir.
 2  Q.   Okay.  Were you -- did you give any -- did you
 3  locate any documents in connection with this case?
 4  A.   Yes, sir.
 5  Q.   Okay.  Tell me what you did.
 6  A.   I pulled any e-mails, both through Outlook and our
 7  customer retention tool, ELEADs, and any text messages,
 8  including videos.
 9  Q.   And did you give those all to your attorney to your
10  left -- or to the attorney to your left?
11  A.   I provided those to our internal HR attorney.
12  Q.   And who is your internal HR attorney?
13  A.   Shannon Mirus.
14  Q.   Spell the last name.
15  A.   M-i-r-u-s.
16  Q.   And when did you pull those and gave them to your
17  HR attorney?
18  A.   I don't remember the exact time.
19  Q.   Was it a few months after the sale of the vehicle
20  that we're here about?
21  A.   I don't remember the exact time frame.
22  Q.   Did you do all that in one -- how long did it take
23  you to do that search?
24  A.   I'd be guessing.
25  Q.   Did you do the search over multiple days or would
```



```
 1   do?
 2   A.   Search my e-mail.
 3   Q.   But you've done that, correct?
 4   A.   I have done that in regards to my interactions with
 5   Mr. Adeli, correct.
 6   Q.   But have you searched it with regards to your
 7   interactions with anyone about Mr. Adeli?
 8   A.   No, sir, I have not.
 9   Q.   You've not done that?
10   A.   I have not, no.
11   Q.   And you have not been asked to do that?
12   A.   No, sir.
13   Q.   Have you -- could you do that if you were asked?
14   A.   Yes, sir.
15             MR. CROWDER:  We'd ask that be done.
16             MR. DONOVAN:  We'll do it.
17   Q.   (BY MR. CROWDER) All right.  Have you searched for
18   text messages between anyone concerning Mr. Adeli other
19   than -- like, to Mr. Slone, text messages between the
20   two of you?
21   A.   Yes.
22   Q.   Did you, in fact, find some text messages between
23   the two of you?
24   A.   We weren't able to locate them because we text so
25   often.
```



```
 1   Q.   So you're certain you texted him about this?
 2   A.   Yes, sir.
 3   Q.   But you can't find them?
 4   A.   No, sir.
 5   Q.   Do you have your phone with you now?
 6   A.   I do.
 7   Q.   Okay.  Do you -- is it a corporate phone?
 8   A.   No, sir.
 9   Q.   Okay.  Do you back up things to your iCloud?  Do
10   you know what iCloud is?
11   A.   Yes, sir.
12   Q.   Do you back up your phone to iCloud?
13   A.   Yes, sir, it automatically does.
14   Q.   Okay.  I don't know if it makes sense, but we'd
15   like to get those backups because I think that probably
16   would capture those -- you know, if there are text
17   messages between you and Mr. Slone related to this.
18              MR. DONOVAN:  We will look into it.
19              MR. CROWDER:  Thank you.
20   Q.   (BY MR. CROWDER) Have you talked to anybody --
21   other than your attorney, have you talked to anyone else
22   to prepare for today's deposition?
23   A.   To prepare, no.
24   Q.   Okay.  Did you talk to anybody else, saying "I've
25   got to go to a deposition this afternoon"?
```



```
 1   Q.   Okay.  How have you heard the vehicle?
 2   A.   When it was parked in our shop prior to pickup and
 3   then during pickup.
 4   Q.   So where was the vehicle between 9/1/16 and
 5   11/16/16, those two months?
 6   A.   I don't know.
 7   Q.   When did you see it in the shop?
 8   A.   I don't recall.
 9   Q.   If you wanted to try to figure out when you saw it
10   in the shop, is there something you could look at that
11   would help you?
12   A.   I could.
13   Q.   What would that be?
14   A.   My text messages to Mr. Adeli.
15   Q.   So how many owners has the vehicle had?
16   A.   I don't know.
17   Q.   Were you involved in Silverstar's decision to sell
18   the vehicle?
19   A.   No, sir.
20   Q.   Who was involved in that decision?
21   A.   I don't know.
22   Q.   Were you -- is there something you could reference
23   that would help you remember whether you were
24   involved -- who was involved in the decision to sell it?
25   A.   No, I was not involved with the decision to sell
```



```
 1   on the vehicle?
 2   A.   To be comfortable selling the vehicle.
 3   Q.   And would you be -- I take it you would be
 4   uncomfortable selling a vehicle like that Ferrari
 5   without a prepurchase inspection, correct?
 6   A.   Yes, sir.
 7   Q.   Have you had prepurchase inspections done before?
 8   A.   I have not.
 9   Q.   So this was the first prepurchase inspection you'd
10   ever been involved with?
11   A.   Yes, sir.
12   Q.   And how were you involved in the prepurchase
13   inspection?
14   A.   I wasn't.
15   Q.   Who was?
16   A.   Michael.
17   Q.   Anyone else?
18   A.   No, sir.
19   Q.   Have you had any communications at all with anyone
20   from Boardwalk Ferrari or anyone who's done the
21   prepurchase inspection?
22   A.   Yes, sir, I have.
23   Q.   Okay.  Who?
24   A.   Larry Neighbors.
25   Q.   And tell me about your communications with
```



```
 1  Mr. Neighbors.
 2  A.   I was initially concerned after Mr. Adeli's text
 3  message, so I reached out to Mr. Neighbors and had maybe
 4  a five-minute conversation with him.  And after that
 5  conversation, I felt confident in what we had done.
 6  Q.   And how long did you say the conversation lasted?
 7  A.   Maybe five minutes.
 8  Q.   Tell me what y'all said.
 9  A.   I don't remember the specifics.  It's been over
10  two years.
11  Q.   Well, you said you took away from it you were --
12  you were -- you were concerned after you had gotten
13  Mr. Adeli's text message?
14  A.   Yes, sir.
15  Q.   And you had -- how long did it take you before you
16  called Mr. Neighbors?
17  A.   I don't remember the specifics.  Within 24 hours of
18  his text message, though.
19  Q.   What did he tell you to make you feel better?
20  A.   He said that anything that was done that would be
21  of concern to a potential buyer was done.
22  Q.   Did you speak with Mr. Slone before you had this
23  conversation with Mr. Neighbors?
24            MR. DONOVAN:  Which Mr. Slone?
25  Q.   (BY MR. CROWDER) Did you speak with any Mr. Slone,
```



```
 1   A.   I don't recall.
 2   Q.   Was this a conversation you had on the telephone or
 3   in person?
 4   A.   On the telephone.
 5   Q.   Okay.  And what is Mr. Slone's cell phone number?
 6   A.   I don't know off the top of my head.
 7   Q.   Do you have it?
 8   A.   Yes, sir.
 9   Q.   Okay.  And do you text him often?
10   A.   Yes, sir.
11   Q.   Is that the only document you've ever received --
12   Exhibit Number 4, is that the only document you've ever
13   personally seen from Boardwalk Ferrari?
14   A.   Until reviewing for the case, yes.
15   Q.   Meaning, until -- in the last few months, in the
16   last month that's the only document you've seen?
17   A.   Yes, sir.
18   Q.   Okay.  Who receives e-mails from the
19   eleadtrack.net -- from the e-mail website -- e-mail
20   address mbofnwa@eleadtrack.net?
21   A.   The database, and it's visible to the salesperson
22   and management.
23   Q.   And who is responsible for responding to e-mails
24   from that e-mail address?
25   A.   The salesperson.
```

