UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

HAMID ADELI                                                  PLAINTIFF

v.                          No. 5:17-cv-05224

SILVERSTAR AUTOMOTIVE, INC.
d/b/a Mercedes-Benz of Northwest Arkansas                      DEFENDANT

**OPINION AND ORDER**

Before the Court are cross-motions for summary judgment. Defendant Silverstar Automotive, Inc. filed a motion (Doc. 22) for summary judgment on all claims, as well as a statement of facts (Doc. 23) and a brief (Doc. 24) in support of its motion. Plaintiff Hamid Adeli filed a response (Doc. 30) in opposition, and a statement of facts (Doc. 31) in support of his response. Defendant filed a reply (Doc. 40). Separately, Plaintiff filed a motion (Doc. 25) for partial summary judgment, a brief (Doc. 26) in support, and a statement of facts (Doc. 27) in support of his motion. Plaintiff's motion for partial summary judgment is limited to Defendant's liability under the Arkansas Deceptive Trade Practices Act (ADTPA), and only with respect to Defendant's failure to disclose a leaky exhaust manifold. Defendant filed a response (Doc. 32) in opposition, a response to Plaintiff's statement of undisputed facts (Doc. 33), a statement of facts (Doc. 34), and a brief (Doc. 35) in support of his response. Plaintiff filed a reply (Doc. 39). For the reasons set forth below, Defendant's motion for summary judgment will be granted in part and denied in part, and Plaintiff's motion for partial summary judgment will be denied.

**I.**      **Background**

On November 7, 2016, Plaintiff Hamid Adeli contacted Defendant Mercedes-Benz of Northwest Arkansas to inquire about a used 2007 Ferrari F430. The parties engaged in back and forth discussions which ultimately culminated in Plaintiff's purchase of the Ferrari on November

1

17, 2016.

Prior to the sale, Defendant engaged Boardwalk Ferrari ("Boardwalk") to conduct a pre-purchase inspection (PPI) of the car. Boardwalk provided Defendant with a list of "recommended services." Defendant approved some repairs, but declined others, including an "exhaust header" repair. On the list of "recommended services," Boardwalk marked that the "exhaust header" repair had been declined. Defendant's employee, Michael Slone, testified that Boardwalk personnel stated that the exhaust headers did not need immediate repair, and that he later drove the car from his house in Fayetteville, Arkansas to Defendant's sales lot in Bentonville, Arkansas without any issue. Boardwalk provided Defendant with an itemized receipt of the repairs it made to the Ferrari. The receipt did not mention any declined repairs. A Boardwalk employee testified that the only documentation generally provided to customers is the itemized receipt of services.

After the inspection but before the sale to Plaintiff, a prospective customer from California inquired about the Ferrari. Defendant provided both Boardwalk's itemized receipt and list of "recommended services" to the prospective customer. The prospective customer did not purchase the Ferrari, stating he did not believe it would meet California's strict emissions requirements. Additionally, the prospective purchaser notified the Defendant that individuals on a Ferrari forum described the exhaust header issue as a potential safety problem.

During phone and text message negotiations and discussions with Plaintiff, Defendant's employees described the Ferrari as being in "turnkey, excellent condition." They also said a PPI had been performed, and all necessary repairs had been completed, except for an issue with the car's Tire Pressure Monitoring System. They did not mention the exhaust headers. In one text message negotiation with Plaintiff, Defendant's employee purportedly quoted the Ferrari's owner as having said, "[i]f all the service was not completed, I would do [$]90k but I did the service and

2

pre buy because it was the right thing to do." (Doc. 31-1, p. 2). As a part of that string of text message negotiations, Plaintiff ultimately decided to purchase the car and provided his bank account number and routing number. (Doc. 31-1, p. 2).

Among the documents related to the transaction were an invoice (Doc. 22-2); an odometer disclosure statement (Doc. 22-3); a check (Doc. 22-4); a notice that Arkansas has no "cooling off" or cancellation period for used car purchases (Doc. 22-5); and a Buyer's Guide acknowledging the car was to be purchased "as is." (Doc. 22-6). Given the car's price, Plaintiff was not surprised that the car was being sold "as is." Plaintiff and his wife both signed the Buyer's Guide, the odometer disclosure statement, the invoice, and the notice. The invoice included a provision stating, "the dealership hereby expressly disclaims all warranties, either express or implied." (Doc. 22-2, p. 1).

Shortly after taking possession of the car, Plaintiff began to smell gasoline emitting from the car. The odor was so strong that it seeped from Plaintiff's garage into his home. Plaintiff had the car towed to a mechanic to diagnose the issue. The mechanic made numerous repairs, including one to a leaky exhaust manifold. Plaintiff contacted Defendant after he discovered these issues, and Defendant assured Plaintiff that "anything that would be a concern to someone buying a 10 year old used vehicle" had been fixed. (Doc. 31-2). Plaintiff alleges that most of these issues, including the exhaust manifold, would have been discovered during a routine PPI. Plaintiff also alleges that the leaky exhaust manifold is an obvious safety issue that should have been disclosed prior to purchase.

Plaintiff filed an action in Virginia district court alleging breach of warranty, fraud, and violations of Virginia and Arkansas consumer protection laws for damages he suffered as a result of repairs he claims he was forced to make. The Virginia action was dismissed on jurisdictional grounds, and Plaintiff subsequently filed suit in this Court.

## II. Standard of Review

On a motion for summary judgment, the burden is on the movant to show that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The same standard applies to cross-motions for summary judgment, with each party's motion reviewed in its own right and the parties "entitled to the benefit of all inferences favorable to them which might reasonably be drawn from the record." *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983). Once the movant has met its burden, the nonmovant must present specific facts showing a genuine dispute of material fact exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In order for there to be a genuine dispute of material fact, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III. Analysis

### A. Defendant's Motion for Summary Judgment

Defendant moves for summary judgment with respect to all of Plaintiff's claims. Defendant argues that only Arkansas law should apply to Plaintiff's fraud and consumer protection claims. Defendant's motion will be granted on the issue of the parties' choice of law dispute, and whether Plaintiff has a claim under the Virginia Consumer Protection Act. In light of Plaintiff's concession (Doc. 30, p. 11), judgment for Defendant will also be granted on Plaintiff's breach of implied warranty claims. Defendant's motion will be denied with respect to the breach of express warranty, fraud, and ADTPA claims.

#### 1. Choice of Law and Virginia Consumer Protection Act

The parties disagree about what law should apply to Plaintiff's fraud and consumer

4

protection claims. Plaintiff argues that Arkansas law should apply to any pre-purchase misrepresentations and Virginia law should apply to any post-purchase misrepresentations, and that pre-purchase and post-purchase misrepresentations give rise to separate claims. Defendant contends that only Arkansas law should apply, and Plaintiff's claims are limited to alleged misrepresentations occurring before the sale.

To the extent Plaintiff attempts to assert separate fraud or consumer protection claims on the basis of post-purchase misrepresentations, no such claims can proceed. Whichever state's law applies, an essential element of fraud and consumer protection claims premised on misrepresentation is Plaintiff's reliance on the misrepresentation. *See Apex Oil Co., Inc. v. Jones Stephens Corp.*, 881 F.3d 658, 662–63 (8th Cir. 2018) (holding Arkansas law would require reliance under ADTPA to show that misrepresentation was cause of Plaintiff's injury); *Born v. Hosto & Buchan, PLLC*, 372 S.W.3d 324, 333 (Ark. 2010) (listing justifiable reliance as an element of fraud); *Owens v. DRS Automotive Fantomworks, Inc.*, 764 S.E.2d 256, 260–61 (Va. 2014) (explaining reliance on misrepresentation is necessary to prevail on common law fraud claims and to satisfy causation element under Virginia Consumer Protection Act). Plaintiff points to no instance of reliance on the alleged post-purchase misrepresentations. Rather, those representations are identical to the pre-purchase representations that Plaintiff argues induced him to buy the Ferrari. They are merely a continuation or ratification of pre-purchase representations and are part of the same transaction or occurrence. Plaintiff's attempt to separate these statements into different causes of action therefore fails. The Court will apply only one jurisdiction's substantive law to Plaintiff's fraud and consumer protection claims.

To determine what state substantive law applies in a federal diversity case, the Court applies the conflict of law principles of the state in which the Court sits. *Schwan's Sales Enters.,*

*Inc. v. SIG Pack, Inc.*, 476 F.3d 594, 596 (8th Cir. 2007) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Interstate Cleaning Corp. v. Commercial Underwriters Ins. Co.*, 325 F.3d 1024, 1027 (8th Cir. 2003)). The first step in a choice of law analysis is to determine the nature of the action. *Shelby Cty. Health Care Corp., v. S. Farm Bureau Cas. Ins. Co.*, 855 F.3d 836, 841 (8th Cir. 2017). Common law fraud is a tort. *Calandro v. Parkerson*, 936 S.W.2d 755, 759 (Ark. 1997). Neither party cites precedent explaining whether consumer protection cases are tort-based or contract-based under Arkansas law, and this Court has not found any. Courts analyzing consumer protection laws in other jurisdictions are split on this issue. *See Pen Coal Corp. v. William H. McGee and Co., Inc.*, 903 F.Supp. 980, 983 (S.D. W.Va. 1995) ("For the purpose of choice-of-law analysis, however, bad faith and unfair trade practices claims properly should be characterized as contract, not tort, claims."); *but see Crellin Techs., Inc. v. Equipmentlease Corp.*, 18 F.3d 1, 10-11 (1st Cir. 1994) ("For choice-of-law purposes, we treat appellant's [consumer protection claim] as a species of tort claim."); *Guidance Endodontics, LLC v. Dentsply Int'l., Inc.*, 749 F.Supp.2d 1235, 1274-76 (D.N.M 2010) (finding claim for fraudulent and deceptive trade practices "more akin to a tort claim of fraudulent misrepresentation than to a breach of contract claim").

In the instant case, Plaintiff's consumer protection claims are most appropriately characterized as tort-based. The injury Plaintiff alleges in his consumer protection claims does not involve the terms of the contract with Defendant, but rather arises out of his reliance on Defendant's statements and omissions. Fraudulent misrepresentation is widely considered to be tort-based. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 148. This Court therefore

applies Arkansas's choice of law rules for torts.[1]

In tort actions, an Arkansas choice of law analysis depends on lex loci delicti, the law of the place where the wrong took place, and Leflar's five choice-influencing factors: (1) predictability of results, (2) maintenance of interstate and international order, (3) simplification of the judicial task, (4) advancement of the forum's governmental interests, and (5) application of the better rule of law. *Ganey v. Kawasaki Motors Corp., U.S.A.*, 234 S.W.3d 838, 846-47 (2006) ("In this case, the trial court properly considered both the doctrine of lex loci delicti and the five 'choice-influencing considerations' promulgated by Professor Leflar . . . .").

The first step in the analysis is to determine the place of the wrong. *Id.* at 846. Although the effects were felt in Virginia, Plaintiff's claims are based on allegedly fraudulent misrepresentations and omissions made by Defendant and its employees in Arkansas. The "place of the wrong" is Arkansas. Lex loci delicti favors application of Arkansas law.

Next, the Court weighs this conclusion with the five choice-influencing factors. The first factor is predictability of results, the purpose of which is to prevent forum shopping and ensure uniform results. *Miller v. Pilgrim's Pride Corp.*, 366 F.3d 672, 674 (8th Cir. 2004); *Gomez v. ITT Educ. Servs., Inc.*, 71 S.W.3d 542, 547 (Ark. 2002). Application of Arkansas law to misrepresentations made in Arkansas by Arkansas businesses, whether to Arkansas customers or out-of-state customers, yields a more uniform result than applying the law of the forum where a customer ultimately decides to bring the product purchased. The first Leflar factor weighs in favor of applying Arkansas law.

The next factor is maintenance of interstate and international order, which focuses on

---

[1] Even if these claims were to be characterized as contractual in nature, the Court's analysis under the Second Restatement would also warrant the application of Arkansas law, as it is the state with the most significant relationship.

whether application of one state's law would manifest disrespect for another state's sovereignty or impede the interstate movement of people and goods. *Shelby Cty.*, 855 F.3d at 843; *Schlemmer v. Fireman's Fund Ins. Co.*, 730 S.W.2d 217, 219 (Ark. 1987). Application of Arkansas law to a fraudulent misrepresentation made in connection with an Arkansas sale would not disrespect the sovereignty of Virginia, whose citizen reached out to Arkansas, or impede interstate commerce. Application of Virginia law, however, would interfere with Arkansas's interest in regulating the business practices of its companies. Moreover, if a vendor in one state could be subjected to the laws of another state because a customer from the other state unilaterally reached into the vendor's state, interstate commerce could be impeded as vendors may dedicate resources to excluding out-of-state customers. This factor weighs in favor of applying Arkansas law.

The third factor is simplification of the judicial task. "A federal district court is faced almost daily with the task of applying some state's law other than that of the forum state . . . ." *Hughes v. Wal-Mart Stores, Inc.*, 250 F.3d 618, 620 (8th Cir. 2001). The Court is equally capable of applying Virginia or Arkansas law. This factor does not favor the application of either state's law over the other. However, while not dispositive on this factor, Plaintiff's suggested application of different laws to the same misrepresentations depending on the timing of each statement would unnecessarily complicate this litigation.

The fourth factor is the advancement of the forum's governmental interest. The Court determines the forum's interest by examining its contacts with the case. *Shelby Cty.*, 855 F.3d at 843. A state with "little or no contact with a case" should not apply its own law where "nearly all of the significant contacts are with a sister state." *Hughes*, 250 F.3d at 620-21. Here, the most significant contacts are with Arkansas. The transaction and all related alleged misrepresentations occurred within the borders of Arkansas. Defendant did not target its sales to Virginia. Rather, a

Virginia customer reached into Arkansas to conduct this transaction. Arkansas has an interest in policing its businesses' consumer-related practices. This factor weighs in favor of applying Arkansas law.

"The fifth and final factor suggests that a court ascertain which law is better, or, in other words, which law makes good socio-economic sense for the time when the court speaks." *Hughes*, 250 F.3d at 621 (citations and internal quotations omitted). "Our court has been especially hesitant to pronounce the better law when other Leflar factors point decidedly towards the application of one state's law." *Id.* Here, nearly every other factor points to the application of Arkansas law, as does lex loci delicti. This factor might weigh in favor of applying Virginia law, as that state's consumer protection statutes allow for treble damages, but because the other factors definitively weigh in favor of applying Arkansas law, application of Virginia law is not warranted.

Applying lex loci delicti and Leflar's choice-influencing factors, Arkansas fraud and consumer protection laws should govern the causes of action arising out of the alleged misrepresentations. Based on the foregoing analysis, Defendant's motion for summary judgment will be granted insofar as the Court will apply the Arkansas common law of fraud and the ADTPA to Plaintiff's claims, and Plaintiff's Virginia state law causes of action will be dismissed.

## 2. Breach of Express Warranty

Defendant's motion for summary judgment will be denied with respect to Plaintiff's breach of express warranty claim. Defendant argues that even if any express warranties were made, such warranties were properly disclaimed in the sales documents. Plaintiff, on the other hand, argues that Defendant failed to adequately disclaim all express, *written* warranties, and therefore his breach of express warranty claim is viable. The Court will begin by addressing the disclaimer and will then discuss the breach of express warranty claim.

a. **Disclaimer**

Plaintiff argues that Defendant did not adequately disclaim express, written warranties. Plaintiff's argument depends on the "as is" provision in the Buyer's Guide not applying to written statements. It is undisputed that as part of the transaction, Plaintiff signed a Buyer's Guide that states he is purchasing the car "AS IS – NO WARRANTY." The phrase "AS IS – NO WARRANTY" appears in all caps, is located at the top of the document, is in conspicuously large print, and has an equally large check mark next to it. (Doc. 22-6). The provision further reads: "YOU WILL PAY ALL COSTS FOR ANY REPAIRS. The dealer assumes no responsibility for any repairs regardless of any oral statements about the vehicle." (Doc. 22-6).[2] Plaintiff argues this form, by implication, disclaims only oral express warranties. Plaintiff identifies text messages from the dealership communicating that a PPI had been completed and all repairs, other than the TPMS, had been completed, as express warranties outside the scope of the disclaimer.

The Court disagrees. Although the "as is" provision alone is likely sufficient to disclaim all warranties, the invoice signed as part of the transaction leaves no room for doubt. It reads:

> DISCLAIMER OF WARRANTIES: Any warranties on the products sold hereby are those made by the manufacturer(s) of those products. The above named Dealership, hereby expressly disclaims all warranties, either express or implied, including any implied warranty of merchantability or fitness for a particular purpose, and the said dealership neither assumes nor authorizes any person to assume for it any liability in connection with the sale of said products.

(Doc. 22-2). Both Plaintiff and his wife signed the invoice immediately below this disclaimer. The disclaimer here is sufficiently broad in scope to cover all express warranties, whether oral or written. However, this complete disclaimer may still be deemed ineffective with respect to certain

---

[2] This disclaimer effectively limits Defendant's liability with respect to any implied warranties. Ark. Code Ann. § 4-2-316(3)(a). It is for this reason that Plaintiff concedes in his Response that his breach of implied warranty claim should be dismissed.

express warranties.

b.     **Express Warranty**

The next question is whether the contract between the parties included an express warranty, and, if so, whether the express warranty and the disclaimer can be construed as consistent with each other. If not, the disclaimer is ineffective as to that express warranty. *See* Ark. Code Ann. § 4-2-316(1). This inquiry is complicated by the fact that no one document represents the final written contract between the parties. Because the contract between the parties involved the sale of goods, Article 2 of Arkansas's codification of the Uniform Commercial Code (UCC) controls the transaction. Ark. Code Ann. § 4-2-102. Because the sale of the Ferrari involved goods worth at least $500, the UCC requires that the contract be reduced to writing. Ark. Code Ann. § 4-2-201(1).

No one document agreed to be a final written contract of sale exists. The parties are apparently in agreement that several of the documents relating to the purchase of the Ferrari are part of their final written agreement, including a signed invoice (Doc. 22-2); a signed odometer statement (Doc. 22-3); a check from Fairfax County Federal Credit Union to Mercedes-Benz of Northwest Arkansas, dated November 21, 2016, in the amount of $88,129 (Doc. 22-4);, a signed notice that Arkansas does not have a "cooling off" period (Doc. 22-5); and a signed Buyer's Guide (Doc. 22-6).

Notably, the signed invoice also refers to a $2,000 deposit, and the check (Doc. 22-4) is not for the full sale price listed in the invoice (Doc. 22-2). Text messages between the parties include a written offer of the Ferrari for sale at $90,000, as well as Plaintiff's apparent acceptance when he writes that he is working on wiring money to Defendant's bank account, provided in the text messages. (Doc. 31-1). This particular string of messages also includes the negotiations between the parties, communicates that an inspection was done on the Ferrari, and states "all the

11

service has been completed." (Doc. 31-1). A reasonable juror could conclude that the parties intended this writing to be incorporated into their final written agreement, along with the invoice, Buyer's Guide, and other documents. Which documents were intended by the parties to represent their final agreement is a dispute of material fact on which their remaining breach of warranty arguments depend.

This is because when a contract is set forth "in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein [those terms] may not be contradicted by evidence of any prior agreement or by a contemporaneous oral agreement." Ark. Code Ann. § 4-2-202. The invoice (Doc. 22-2) contains a disclaimer of express warranties. The text messages (Doc. 31-1) contain a statement that an inspection has been done and "all the service has been completed." Although the disclaimer in the invoice is effective to disclaim any oral express warranties made either prior to sale or at the time of sale, if the parties intended some of those text messages to be incorporated into their final written agreement—including the statement "all the service has been completed"—then the final written agreement includes a written express warranty that cannot be disclaimed by the invoice, and is not omitted from the contract under Ark. Code Ann. § 4-2-202 as contradictory parol evidence.

In the event the warranty "all the service has been completed" was intended to be part of the final written agreement, the next genuine dispute of material fact for the jury is the scope of the warranty. The parties point to evidence in the record demonstrating disputes over the extent of Defendant's knowledge prior to the sale of the Ferrari, and whether certain defects in the car's manifold should have been disclosed or would have been the sort of necessary repairs included in the warranty. Defendant argues that, given the nature of the sale, and based on Boardwalk's representations to Mr. Slone, problems with the exhaust manifold did not need to be repaired or

12

disclosed to Plaintiff. Plaintiff cites evidence that the manifold repairs should have been completed and disclosed at the time of the purchase for safety reasons. Both parties disagree as to whether the declaration that "all the service has been completed" included the cracked manifold.

Where language in a contract is unclear or ambiguous, Arkansas law allows the use of extrinsic evidence to explain or interpret the writing. Ark. Code Ann. § 4-2-202(a), (b); *Hurt-Hoover Investments, LLC v. Fulmer*, 448 S.W.3d 696, 703 (Ark. 2014). "Where . . . parol evidence has been admitted to explain the meaning of the language, the determination becomes one of fact for the jury to determine." *Smith v. Farm Bureau Mutual Ins. Co. of Arkansas, Inc.*, 194 S.W.3d 212, 219 (Ark. Ct. App. 2004); *Elam v. First Unum Life Ins. Co.*, 57 S.W.3d 165, 169 (Ark. 2001). Because the meaning of the phrase "all the service has been completed" is ambiguous, clarification by submission to the jury is necessary.

Defendant's motion for summary judgment with respect to Plaintiff's express warranty claim will be denied.

### 3. Fraud

A genuine dispute of material fact exists as to Plaintiff's fraud claim. To prevail Plaintiff must show: (1) a misrepresentation of a material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; and (5) damages suffered as a result of the reliance. *Born v. Hosto & Buchan, PLLC*, 372 S.W.3d 324, 333 (Ark. 2010). A plaintiff may also succeed on a fraud claim "where the false representation is due to silence," but only where the representation includes "(1) concealment of material information and (2) non-disclosure of certain pertinent information." *Farm Bureau Policy Holders and Members v. Farm Bureau Mut. Ins. Co. of Arkansas, Inc.*, 984 S.W.2d 6, 14-15 (Ark.

13

1998); *see also Humphrey v. Electrolux Home Prods. Inc.*, 2012 WL 3257664, at *2 (E.D. Ark. Aug. 9, 2012) (citation omitted) ("Where the allegedly false representation is the result of silence, the silence must relate to a material matter known to the party and which it is his legal duty to communicate to the other contracting party.").

Genuine disputes exist as to whether Defendant's statements concerning the extent of repairs made to the Ferrari and its condition were misrepresentations material to the transaction, and whether Defendant's failure to disclose the issues Boardwalk identified with the exhaust headers was a concealment of a material fact known to Defendant that it ought to have disclosed to Plaintiff. For example, a Boardwalk employee testified that he would not sell a car with a leaky exhaust manifold. Plaintiff provided evidence that a previous buyer drew attention to the problems associated with such a defect, and that individuals on a Ferrari forum identified it as a safety concern. Plaintiff's expert states that this defect could lead to safety issues. Conversely, Defendant provided evidence that this issue did not require immediate repair and was not material to an "as is" transaction. Mr. Slone testified that after the PPI, a Boardwalk employee told him that the car was ready for the next buyer, and that he drove the car without any issue. Furthermore, Plaintiff knew Defendant was selling the car "as is" and was disclaiming any responsibility for repairs. Based on the disputes regarding the materiality of exhaust headers or exhaust manifold repairs, the question of material misrepresentation or omission must be left to the jury to answer.

There is also a genuine dispute as to whether Plaintiff's reliance on the Defendant's statements and representation was justified. Whether a consumer's reliance is justified depends on the circumstances of the case and is a question of fact. *See Morris v. Knopick*, 521 S.W.3d 495, 501 (Ark. App. 2017). The undisputed facts show that Plaintiff knew he was purchasing the car "as is." Plaintiff has a history of purchasing Ferraris and other high-performance cars. The facts

show the car was underpriced. Plaintiff testified that he was not surprised the car was sold "as is" based on the list price. Plaintiff signed the Buyer's Guide acknowledging the transaction was "AS IS—NO WARRANTY." A genuine dispute exists as to whether Plaintiff's reliance on Defendant's representations was justified.

Plaintiff has cited sufficient evidence in the record to raise a genuine dispute with respect to the other elements of fraud, as well. Defendant's motion for summary judgment with respect to Plaintiff's common law fraud claim will be denied.

### 4. ADTPA

Defendant's motion for summary judgment with respect to the ADTPA claim fails for similar reasons. To prevail on an Arkansas Deceptive Trade Practice claim, a plaintiff must show (1) a deceptive consumer-oriented act or practice which is misleading in a material respect; and (2) injury resulting from such act. *Skalla v. Canepari*, 430 S.W.3d 72, 82 (Ark. 2013) (citing Ark. Code Ann. § 4–88–113(f)). Making statements or refraining from making statements about a product to a retail purchaser is a consumer-oriented act. For the same reasons discussed above, summary judgment for Defendant is improper because there remains a genuine dispute as to whether the statements or omissions were deceptive or misleading and whether they were material. Therefore, Defendant's motion for summary judgment with respect to Plaintiff's ADTPA claim will be denied.

### B. Plaintiff's Motion for Partial Summary Judgment

Plaintiff moves for partial summary judgment on the issue of ADTPA liability, and only with respect to Defendant's failure to disclose the leaky exhaust manifold. For the same reasons stated above, genuine disputes of fact exist as to whether the omission was deceptive, whether it was misleading, and whether it was material. Plaintiff's motion will be denied.

15

## IV. Conclusion

IT IS THEREFORE ORDERED that Defendant's motion for summary judgment (Doc. 22) is GRANTED IN PART and DENIED IN PART. The motion is GRANTED insofar as Arkansas law governs these proceedings and Plaintiff's Virginia Consumer Protection Act and Arkansas breach of implied warranty claims are DISMISSED WITH PREJUDICE. The motion is otherwise DENIED.

IT IS FURTHER ORDERED that Plaintiff's motion for partial summary judgment (Doc. 25) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Arkansas claims for breach of express warranty, common law fraud, and ADTPA liability remain for trial.

IT IS ORDERED this 13th day of September, 2018.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE