**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

| | |
|---|---|
| **HAMID ADELI** | **PLAINTIFF** |
| v.      Case No. 5:17-CV-05224-PKH | |
| **SILVERSTAR AUTOMOTIVE, INC.** <br> **d/b/a MERCEDES-BENZ OF NORTHWEST ARKANSAS** | **DEFENDANT** |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS RENEWED MOTION FOR ATTORNEYS' FEES AND COSTS**

With the Court's acceptance of the unanimous jury verdict, entry of judgment on September 27, 2018 [ECF No. 62], entry of amended judgment on February 7, 2019 [ECF No. 84], and mandate from the Eighth Circuit Court of Appeals affirming the judgment [ECF No. 106], Plaintiff Hamid Adeli ("Plaintiff" or "Mr. Adeli") seeks reimbursement of his attorneys' fees and costs under the Arkansas Deceptive Trade Practices Act ("ADTPA"), Ark. Code Ann. § 4-88-113(f)(B)(3); Ark. Code. Ann. § 16-22-308; Fed. R. Civ. P. 54(d); Local Rule 54.1; and 28 U.S.C. §1920.

## I.    LEGAL STANDARD

**A.    Sources of Law for Attorney Fees and Costs**

In this diversity case, Arkansas law governs substantive issues, including attorney's fees. *GeoVera Specialty Ins. Co. v. Graham Rogers, Inc.*, Case No. 4:08CV00163-SWW, 2010 WL 3327688, at *1, 2010 U.S. Dist. LEXIS 93716, at *4-5 and n.1 (E.D. Ark. Aug. 23, 2010), *aff'd* in part, *rev'd* in part on other grounds, 636 F.3d 445 (8th Cir. 2011).

1. **ADTPA, Ark. Code Ann. § 4-88-113(f)(B)(3)**

The ADTPA expressly states that "[a] court may award reasonable attorney's fees." Ark. Code Ann. § 4-88-113(f)(B)(3). Under this provision, "a party who prevails on a cause of action to recover actual damages under the Arkansas Deceptive Trade Practices Act is eligible for an award of attorney's fees, in the discretion of the court . . ." *G&K Servs. Co. v. Bill's Super Foods, Inc.*, 766 F.3d 797, 802 (8th Cir. 2014); *see also Curtis Lumber Co. v. La. Pac. Corp.*, Case No. 2:08CV000107 JMM, 2011 WL 3203722, at *1, 2011 U.S. Dist. LEXIS 82574, at *2 (E.D. Ark. July 27, 2011) (finding same).

2. **Ark. Code. Ann. § 16-22-308**

Ark. Code Ann. § 16-22-308 provides:

> In any civil action to recover . . . for . . . breach of contract, unless otherwise provided by law or the contract which is the subject matter of the action, the prevailing party may be allowed a reasonable attorney's fees to be assessed by the court and collected as costs.

The term "prevailing party" is construed to relate to the entire case, rather than "in terms of particular issues or actions therein." *Carroll v. UV Props., LLC*, 2009 Ark. App. 599, at * 2 (2009). "Ultimately, under Arkansas law, the prevailing party is determined by who comes out 'on top' at the end of the case." *Id.* (internal citations and quotations omitted). "[T]here can be only one prevailing party in an action for the recovery of a money judgment, and the prevailing party is the party whose favor the verdict compels a judgment." *CJ Bldg. Corp. v. TRAC-10*, 368 Ark. 654, 658, 249 S.W.3d 793, 797 (2007)(citing *Gill v. Transcriptions, Inc.*, 319 Ark. 485, 892 S.W.2d 258 (1995)).

3. **Fed. R. Civ. P. 54(d)**

Under Fed. R. Civ. P. 54(d)(1) "costs," as distinguished from attorney's fees, "should be allowed to the prevailing party." Awards of costs should be awarded unless a federal statute, rule

or court order provides otherwise. *Id.* A claim for attorney's fees and related *nontaxable* expenses must be made by motion that specifies the judgment and authority entitling the movant to the award and the amount sought (or a fair estimate of it). Fed. R. Civ. P. 54(d)(2).

### 4. Local Rule 54.1

Local Rule 54.1 sets forth the deadline for moving for attorney's fees and the supporting material required to be submitted with such motion.

### 5. 28 U.S.C. § 1920

Section 1920 sets forth costs eligible to be taxed under Fed. R. Civ. P. 54(d)(1). The costs taxable under § 1920 are:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under 28 U.S.C. § 1923;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828.

Given the narrow language of taxable costs recoverable under § 1920, Plaintiff will be formally submitting a separate, revised Bill of Costs reflecting the costs *taxable* under this section, along with supporting documentation.

### B. The Standard for Reasonableness

The Supreme Court has instructed that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied

by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). There is a "strong presumption" that the amount yielded from this formula – counsel's "lodestar" – is presumptively reasonable. *McKeage v. Bass Pro Outdoor World, LLC*, 943 F.3d 1148, 1151 (8th Cir. 2019). Lodestar is not the end of the inquiry, however. "There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained' . . . [t]his factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Id.* at 434; *see also Concord Boat Corp. v. Brunswick Corp.,* 34 F.Supp. 2d 1125, 1129 (E.D. Ark. 1998) (when the plaintiff has been unsuccessful on all claims, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.").

In calculating a reasonable fee, several factors should be considered, including: (1) the experience and ability of the attorney; (2) the time and labor required to perform the service properly; (3) the amount in controversy and the result obtained in the case; (4) the novelty and difficulty of the issues involved; (5) the fee customarily charged for similar services in the local area; (6) whether the fee is fixed or contingent; (7) time limitations imposed upon the client or by the circumstances; and (8) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the attorney. *See Wal-Mart Stores, Inc. v. Cuker Interactive, LLC*, Case No. 5:14-CV-5262, 2018 WL 1597976, at *15, 2018 U.S. Dist. LEXIS 55242, at *47-48 (W.D. Ark. Mar. 31, 2018); *Chrisco v. Sun Indus., Inc.*, 800 S.W.2d 717 (1990). "Because of its intimate acquaintance with the record and the quality of the service rendered," the trial court possesses a "superior perspective" from which to assess the factors. *See Phelps v. U.S. Credit Life Ins. Co.*, 340 Ark. 439, 441, 10 S.W.3d 854, 855 (2000). But "[w]hile courts should be guided by [these] factors, there is no fixed formula in determining the

reasonableness of an award of attorney's fees." *Id.* at 442. Therefore, "when the trial judge is familiar with the case and the service done by the attorneys, the fixing of a fee is within the discretion of the court." *Hartford Accident & Indem. Co. v. Stewart Bros. Hardware Co.*, 285 Ark. 352, 687 S.W.2d 128 (1985); *see also Burlington N. R.R. Co. v. Farmers Union Oil Co. of Rolla*, 207 F.3d 526, 534 (8th Cir. 2000).

## II.   ARGUMENT

### A.   Plaintiff's Attorney's Fee Request is Well-Supported

Based on the sources of law and relevant factors, Plaintiff's counsel requests a fee award in the amount of $364,701.67. This is counsel's lodestar to-date after exercising billing discretion. *See infra* II.A.2.b.

> **1. The Court should award Plaintiff's counsel their fee request under the ADTPA and Ark. Code. Ann. § 16-22-308**
>
> > **a. The Court should exercise its discretion to award counsel their fee request because Plaintiff prevailed on his ADTPA claim**

The ADTPA and binding precedent plainly provide the Court with broad discretion to award attorney's fees when, as here, a plaintiff has prevailed on an ADTPA claim. *See G&K Servs. Co.*, 766 F.3d at 802; Ark. Code Ann. § 4-88-113(f)(B)(3). Plaintiff's counsel submit that their full fee petition can be awarded pursuant to the ADTPA and respectfully request that the court exercise its discretion to do so.

In prior briefing the Defendant did *not* dispute that Plaintiff prevailed on the ADTPA claim, but argued that Plaintiff may not have fees because the case was primarily about fraud rather than about the ADTPA. Defendant is mistaken. There is nothing in the text of Ark. Code Ann. § 4-88-113(f)(B)(3) that requires the Court to deduct fees merely because Plaintiff prevailed on other claims in addition to prevailing on the ADTPA claim. Courts applying Arkansas law have

refrained from attributing attorneys' fees to certain causes of action with fee-shifting provision when the claims are interwoven and driven by a common nucleus of facts. *See, e.g., Wal-Mart Stores, Inc. v. Cuker Interactive, LLC*, Case No. 5:14-CV-5262, 2018 WL 1597976, at *17, 2018 U.S. Dist. LEXIS 55242, at *56-57 (W.D. Ark. Mar. 31, 2018) (stating that plaintiff was not just "entitled to a small fraction of reasonable attorney fees associated with the portion of this litigation that was primarily driven by its trade secret claims" because "the soup had already been made by the time trial began, so to speak, such that the time and labor that [the] attorneys devoted to its trade secret claims cannot meaningfully be segregated into portions attributable to one category of claimed trade secret versus another."); *Old St. Paul Missionary Baptist Church v. First Nation Ins. Grp.*, Case No. 3:07CV00043 JLH, 2010 WL 2609918, at *3, 2010 U.S. Dist. LEXIS 63790, at *10 n.6 (E.D. Ark. June 25, 2010) (granting fee request even though a "portion of this time was devoted to the tort issues, but it is not possible to segregate that time in this case."); *Shelton v. Kennedy Funding, Inc.*, Case No. 4:02-CV-00632-WRW, 2009 WL 1286586, *1 (May 7, 2009) (court could "conceive no way to apportion fees between contract and tort.").

Here, Defendant itself has acknowledged that "[a]ll of the causes of action were necessarily based on the same core facts." [Doc. 92, at p. 4]. The crux of the case was that Defendant promised Plaintiff a vehicle in good condition and for which all necessary repairs had been made following a pre-purchase inspection. Defendant, however, delivered a defective vehicle in which necessary repairs were not made and which placed Plaintiff in grave danger given the nature of the remaining defects. On these facts, Plaintiff prevailed on his ADTPA, warranty, and fraud claims at trial and on appeal. As in the cases above, the time and labor devoted to prosecuting the claims "cannot meaningfully be segregated," *see Cuker Interactive, LLC*, 2018 U.S. Dist. LEXIS 55242, at *56-57.

Defendant's authority for its position with respect to the ADTPA claim is *FMC Corp. v. Helton*, 360 Ark. 465, 202 S.W.3d 490 (2005). That 15-year old case is distinguishable, however, because, there, the plaintiffs had more limited success in that (1) their contract claims were dismissed before trial and (2) the jury apportioned 10 percent of fault to each of the two plaintiffs. *See id.* at 472-73. Moreover, the nature of the dispute—in which defendants caused an unapproved insecticide to be sprayed on plaintiffs' wheat crops—was substantially different because the mix of tort, contract, and ADTPA claims were more distinct, as illustrated by the dismissal of the contract claims. That gives rise to the inference that attorney labor performed with respect to the different claims could be more readily isolated than here, where ADTPA, contract, and tort claims arose from the same set of facts and all proceeded to trial with Plaintiff prevailing on all claims. In light of the nature of this case, in which Plaintiff prevailed on all claims at trial and on appeal, Plaintiff submits that the Court is authorized under the ADTPA to grant fees in an amount within its discretion under the relevant factors. *See G&K Servs. Co.*, 766 F.3d at 802.

  **b. The Court should exercise its discretion to award counsel their fee request per Ark. Code. Ann. § 16-22-308 because Plaintiff prevailed on his warranty claim**

Ark. Code. Ann. § 16-22-308 provides another basis to grant Plaintiff's attorney fee request since the jury returned a Plaintiff's verdict on his warranty claim and is the "prevailing party" in the Action.

Plaintiff recognizes that an award of attorneys' fees is only proper pursuant to this statute when the case is based primarily in contract, *see, e.g., Wheeler Motor Co. v. Roth*, 315 Ark. 318, 328, 867 S.W.2d 446, 451 (1993), and submits that this case meets the criteria for sounding in contract. As stated above, the core of the case is contractual in that Defendant promised a vehicle in good condition but delivered a vehicle so defective that it risked the safety of Plaintiff and his

family. Arguably the greatest focus for both parties at summary judgment and trial concerned the nature of the promises that Defendant made to Plaintiff (including those made in text messages), whether those promises became part of the basis of the contract between the parties, and whether Defendant breached those promises. It is difficult to fathom a scenario in which Plaintiff could have prevailed on his fraud claim at trial without prevailing on his contract claim. Under such circumstances, courts have granted attorneys' fees requests under Ark. Code. Ann. § 16-22-308. *See, e.g., GeoVera Specialty Ins. Co. v. Graham Rogers, Inc.*, Case No. 4:08CV00163 SWW, 2010 WL 3327688, 2010 U.S. Dist. LEXIS 93716, at *6-7 (E.D. Ark. Aug. 23, 2010) (finding award of attorneys' fees appropriate, and that the case sounded in contract because plaintiff "alleged the same facts and offered the same evidence to prove both [breach of contract and negligence], and [plaintiff] could not prevail under a negligence theory without proving that [defendant] breached its contractual duties"); *B&B Hardware, Inc. v. Fastenal Co.*, Case No. 4:10-cv-00317-SWW, 2011 WL 6829625, at *8, 2011 U.S. Dist. LEXIS 150543, at *26-27 n.11 (E.D. Ark. Dec. 16, 2011)(finding award of attorneys' fees appropriate when non-contract claims were "based on the same conduct as the breach of contract claim" and "viewed . . . as variations on the breach of contract theme").

    Notably, recent decisions from Arkansas' intermediate appellate court have determined cases to be primarily sounding in contract, and therefore the basis for an award of attorneys' fees, even when they have tort features to a much greater degree than this case. In *Nissan N. Am., Inc. v. Harlan*, 2017 Ark. App. 203, 518 S.W.3d 89 (2017), for example, the plaintiff brought tort and contract claims against a vehicle manufacturer after she was physically injured when the air bag in the vehicle she was driving suddenly deployed without a collision or other reason. In affirming an award of attorneys' fees under Ark. Code Ann. § 16-22-308, the court relied primarily on two

paragraphs in the complaint—which set forth claims for breach of express warranty and breach of contract. *See also Am. Express Bank, FSB v. Davenport*, 2017 Ark. App. 105, *7, 513 S.W.3d 880, 885 (2017) (affirming an award of counterclaimant attorneys' fees even when he lost on tort claims for conversion, outrage, defamation, abuse of process, and negligence, and on an ADTPA claim, because he nevertheless succeeded in his defense on the breach of contract claim, which was an "integral part" of his defense).

Finally, since Defendant has raised the argument before, it is immaterial to the analysis that Plaintiff received a large punitive damages award under his fraud claim. *See, e.g., Trakru v. Mathews*, 2014 Ark. App. 154, * 11, 434 S.W.3d 10, 18 (2014) (granting attorneys' fee request and affirming punitive damages award); *DWB, LLC v. D&T Pure Tr.*, 2018 Ark. App. 283, *13, 550 S.W.3d 420, 430 (2018) ("Although we agree that substantially more money was awarded for the tort claims . . . this fact is not dispositive . . ."). Here, all that matters is that the case sounds in contract and that Plaintiff prevailed. Because he ended up "on top" he should be awarded his full fee.

### 2. The *Chrisco* factors support the fee request

#### a. The experience and ability of the attorney

Counsel submits that they have extensive experience in consumer protection and other complex litigation and that they are highly regarded in this area of expertise as demonstrated by the attached Declarations and Firm Resumes. *See* Exhibit No. 2, Crowder Decl., Exhibit No. 3, Rathod Decl., Exhibit No. 4 Taylor Decl. *See also Baker*, 263 F. Supp. 2d at 1194 (this factor favored granting fee request when the court found the attorneys to be "able, experienced, and talented").

The quality of opposing counsel is also relevant in assessing the quality of Plaintiff's Counsel's work. Here, Defendant was represented by experienced and highly capable counsel with a reputation for vigorous advocacy in the defense of civil cases, including product liability cases. *See, e.g., Martin v. E-Z Mart Stores, Inc.,* 464 F.3d 827, 831 (8th Cir. 2006) (granting summary judgment for defendants in product liability case in which Mr. Donovan was among defense counsel in the trial court and on appeal). The quality of the Defendant's counsels' efforts here was evident throughout the pendency of the Action. Despite these challenging factors, Plaintiff's counsel nonetheless obtained an exceptional result for the Plaintiff. This factor favors approval of Plaintiff's fee request.

### b. The time and labor required to perform the service properly

Plaintiff's Counsel have expended substantial time and resources to diligently prosecute this Action. Here, counsel has expended 1,179.08 hours on this case, for a total lodestar of $364,701.67. *See* Exhibit No. 2, Crowder Decl., Exhibit No. 3, Rathod Decl., Exhibit No. 4 Taylor Decl.

Counsel begins by noting that it tried to avoid litigation altogether, as set forth in the Complaint: "[p]rior to commencement of this action, Plaintiff, through communications by counsel, sought an informal resolution of this matter, but never received a response from Defendant." [ECF No. 1, ¶ 5]. The work that followed was necessary to prosecute the case in an efficient and effective manner from filing to verdict and then through appeal. *See* Exhibit No. 3, Rathod Dec. ¶¶ 2-15. The hours reflect robust discovery that included extensive third-party discovery, deficiency letters, and telephonic meet and confer calls with opposing counsel, which ultimately yielded important evidence such as text messages and emails. *See* Exhibit No. 3, Rathod Dec. ¶¶ 6-10. Counsel also retained an expert and worked closely with him in preparing his expert

report. *See* Exhibit No. 3, Rathod Dec. ¶ 11. The evidence amassed during discovery was critical to the effective presentation of Plaintiff's case at summary judgment and then trial. The work briefing the appeal and presenting oral argument was necessary to uphold the judgment. *See Walther v. Wilson*, Case No. CV-19-789, 2020 Ark. 194, ¶ 16, 2020 WL 2486652, at **6, 2020 Ark. Lexis 191 at *15 (2020) (rejecting argument that appellate work is not compensable).

### c. The amount in controversy and the result obtained in the case

The core of the amount in controversy was the diminution in value of the Vehicle—purchased for $90,000—because of Defendant's misrepresentations. Plaintiff pled this amount to be $36,655.17. The jury awarded Plaintiff a judgment totaling $5,820,201.00. The reduction of the judgment after post-trial briefing to $520,201.00, which was affirmed on appeal, is still a recovery of considerable size. *See Hughes v. Ozark Guidance Ctr., Inc.*, Case No. 5:13-CV-05032, 2015 WL 554459, at *3, 2015 U.S. Dist. LEXIS 17437, at *8 (W.D. Ark. Feb. 11, 2015) (finding it significant for granting fee petition that plaintiffs "settl[ed] the case for 100% of the overtime wages.").

### d. The novelty and difficulty of the issues involved

Plaintiff's Counsel has extensive experience in the areas of unfair and deceptive trade practices and defective product class actions. *See* Exhibit No. 3, Rathod Decl. ¶ 10; Exhibit No. 2, Crowder Decl. ¶ 1. Appellate counsel specializes in appeals and had relevant experience in the Eight Circuit and in this area of law as well. *See* Exhibit No. 4, Taylor Decl. ¶ 3. To pursue the Action, Plaintiff's Counsel needed to marshal their expertise in consumer protection, warranty and tort law, and the knowledge to distill and analyze facts causing Plaintiff's claims. The combined talents of counsel enabled them to plead viable claims and theories of liability, collect the evidence

to prove the claims, and persuade a jury of the merits. These efforts resulted in a verdict on all claims and an exceptional damages award for Plaintiff through appeal.

### e. The fee customarily charged for similar services

MIGLIACCIO & RATHOD LLP is based in Washington D.C. and uses the rates based on the LSI Laffey Matrix.[1] GUPTA WESSLER PLLC is also based in Washington D.C. and typically charges similar rates. These rates have been accepted by the D.C. Circuit on a fulsome factual record about the cost of legal services in Washington D.C.[2] Under the matrix, Mr. Rathod and Mr. Migliaccio's rate is $747 an hour.

MIGLIACCIO & RATHOD LLP uses these rates and has had them accepted in federal courts across the country. *See, e.g., Carlotti v. Asus Comput. Int'l*, No. 18-cv-03369-DMR, 2020 U.S. Dist. LEXIS 108917, at *17 (N.D. Cal. June 22, 2020) (approving M&R's rates and collecting authority from other federal courts approving the rates). Nevertheless, counsel acknowledges that federal courts sitting in this state have not awarded rates along these lines. Rather, the top line rate for out-of-state counsel, as of over two years ago, was $375-$385 for partners. *See, e.g., Wal-Mart Stores, Inc. v. Cuker Interactive, LLC*, No. 5:14-CV-5262, 2018 WL 1597976, *18, 2018 U.S. Dist. LEXIS 55242, at *61 (W.D. Ark. Mar. 31, 2018); *U.S. ex rel. Rille v. Hewlett Packard Co.*, No. 4:04cv00989 BRW, 2011 WL 4625646, at *4, 2011 U.S. Dist. LEXIS 115285, at *5 (E.D.

---

[1] The matrix is available at laffeymatrix.com/see.html (last accessed July 2, 2020).

[2] In *Salazar v. Dist. of Columbia*, 809 F.3d 58 (D.C. Cir. 2015), the D.C. Circuit affirmed the adoption of the LSI Laffey Matrix as the operative rates for plaintiffs in complex federal litigation in Washington D.C. *Id*. at 64-65. There, to show the reasonableness of the LSI Laffey rates, the plaintiffs submitted an affidavit from an economist, who opined that the LSI Laffey Matrix accurately measures the prices for legal services in Washington D.C., including how those prices have changed. *Id*. at 64. The plaintiffs there also submitted comparative billing tables that demonstrated the accuracy of the LSI Laffey Matrix in capturing average law firm rates. *Id*. at 65. The Circuit court noted that, based on the strong record before it, the rates in Washington, D.C. often far exceed the LSI Laffey rates. *Id*. The Circuit court concluded that "[w]ith these numbers and submissions in the record, the district court's point that 'the LSI-adjusted matrix is probably a conservative estimate of the actual cost of legal services in this area,' does not appear illogical." *Id*. (quoting *Salazar v. Dist. of Columbia*, 991 F. Supp. 2d 39, 48 (D.D.C. 2014)).

Ark. Oct. 05, 2011); *cf. St. Jude Med. S.C., Inc. v. Tormey*, No. 11-327 (MJD/TNL), 2014 WL 2459711, at *2, 2014 U.S. Dist. LEXIS 72954, at *5 (D. Minn. May 29, 2014) (approving rate of $395 per hour as reasonable "in light of the prevailing rates for comparably qualified counsel in Minnesota"). This rate for out-of-state counsel is further supported by the limited market of local attorneys willing to take on a case of this kind on a pure contingency basis. *See Hollowell v. Gravett*, 723 F. Supp. 107, 111 (E.D. Ark. 1989) (noting that an upward fee enhancement is appropriate when a local market treats contingency cases differently, there is a dearth of attorneys willing to take a category of case on, and the case is sufficiently complex that there is a risk of delay and failure); *See* Exhibit No. 1, Declaration of Todd Turner ("Turner Decl.") at ¶ 6 (noting the dearth of attorneys in Arkansas and other states who practice consumer law and who would be willing to take this case on a pure contingency). Counsel submits that out-of-state counsel should have its rates set at $375 an hour for partners and $100 for paralegals and law clerks. *See* Turner Decl. at ¶¶ 3—5 (certifying this rate as reasonable for the market).

The rates for WILLIAM T. CROWDER, PLLC are $350 for partners. This is commensurate with other fee applications for similar in-state counsel with similar experience. *See* Turner Decl. at ¶¶ 3—5; *Walther v. Wilson*, No. CV-19-789, 2020 Ark. 194, * 16, 2020 WL 2486652, 2020 Ark. Lexis 191 (2020), at * 16-17 (noting that Arkansas' attorney charged $350 an hour on a contingency basis).

### f.  Whether the fee is fixed or contingent

Counsel undertook this litigation on a contingency basis. As district courts have recognized: "*Contingency cases are by nature risky.*" *Landaeta v. Da Vinci's Florist, LLC*, 2011 WL 5118420, at *10, 2011 U.S. Dist. LEXIS 122639, *10 (D. Md. Oct. 24, 2011)(emphasis supplied); *see also All-Ways Logistics, Inc. v. USA Truck, Inc.*, 583 F.3d 511, 521 (8th Cir.

2009)(quoting the trial court approvingly when it noted that "[c]ounsel … took a substantial risk in accepting this case on a contingency basis"); *Walther*, 2020 Ark. Lexis 191, at * 11 (stressing the importance of the contingency fee factor and quoting the circuit court approvingly when it noted that a "when you take a case on a contingency, it restricts your ability to do other work."). The "contingent fee" factor favors the requested fee award.

    g. **Time limitations imposed on the client or by the circumstances**

Some of Plaintiff counsel's time was increased because of Defendant's actions in litigating the case. For example, Plaintiff had to press Defendant to supplement its discovery responses and eliminate objections that Plaintiff contended were without merit (and that were, mostly, withdrawn by Defendant). *See* Exhibit No. 3, Rathod Decl. ¶¶ 6-9. This effort notably yielded critical evidence used at the trial such as email correspondence between Michael Slone and Boardwalk Ferrari in which Mr. Slone admitted that "there was a beginning crack into the exhaust" and that he declined the repair to the exhaust headers. *See* Exhibit No. 3, Rathod Decl. ¶ 7. In addition, to proceed to trial, Plaintiff also had to surmount Defendant's motion for summary judgment on all his claims, which required substantial time and effort. *See* Exhibit No. 3, Rathod Decl. ¶ 12. Finally, Defendant appealed the judgment on all claims, which necessitated the engagement of appellate counsel and significant work to uphold the judgment on appeal. *See* Exhibit No. 3, Rathod Decl. ¶ 15.

    h. **The preclusion of other employment by counsel due to acceptance of the case**

"Taking this case upon a contingency fee and the amount of time required to pursue this case restricted [counsel's] ability to do other work. Moreover, [counsel] bore the potential burden of lost time and resources if he failed to prevail in the case." *Walther*, 2020 Ark. Lexis 191, at * 17. Such is the case here. As indicated by the accompanying declarations, Plaintiff's Counsel

have busy law practices, and the substantial time dedicated to this lawsuit precluded them from working on other matters. The size of the counsel's practice and the time demands are relevant. *See Vincent v. Lucent Techs., Inc.*, 2011 WL 5075650, at *5, 2011 U.S. Dist. LEXIS 123780, at *13 (W.D.N.C. Oct. 25, 2011) (finding that the "small size of the [ten-person] firm," as well as its finite resources, made the firm unable to accept other paying work to pursue the litigation). The three firms here each have five or fewer full-time attorneys.

* **

Consideration of the *Chrisco* factors supports Plaintiff's fee request of $364,701.67. That amount is Plaintiff counsel's lodestar and is therefore presumptively reasonable. However, even if the Court were to determine that certain time entries are not compensable, that would *not* mean that the fee request also should be reduced. There are eight factors, not just one, and each fortifies the reasonableness of the fee request. *See Hollowell v. Gravett*, 723 F. Supp. 107, 110 (E.D. Ark. 1989) (enhancing lodestar upward by 75 percent based on an exceptional result and counsel's "superior quality of performance"). *Walther* is instructive. There, the defendant faulted a plaintiff's attorney who failed to maintain a time sheet at all and argued that the absence of a reliable lodestar precluded a fee award. *Walther*, 2020 Ark. Lexis 191, at * 18. The state supreme court found otherwise. *Id.* In doing so, it held that the other factors could support a fee award. *Id.* at * 18-19. Here, Plaintiff submits that its lodestar supports the fee award, but even if it did not, a holistic examination of the *Chrisco* factors compels the same conclusion.

B.     **Plaintiff's Request for Taxable Costs is Well-Supported**

Separately, Plaintiff's Counsel submits a revised Form AO 133 Bill of Costs with supporting documentation showing those costs which may be taxed by the Clerk.

C.  **Plaintiff's Request for Nontaxable Costs is Well-Supported**

Rule 54(d)(2) contemplates recovery of "related nontaxable expenses" under the attorneys' fee umbrella. A broad range of litigation expenses not taxable under 28 U.S.C. § 1920 are nonetheless eligible for reimbursement if they are items reasonably charged by attorneys to their clients. Here, Plaintiff seeks reimbursement of non-taxable costs in the amount of including most prominently for travel and lodging in connection with depositions, trial, and oral argument on appeal. *See Moore v. Thurston*, Case No. 4:14CV00065 JM, 2019 U.S. Dist. LEXIS 225243, at *5 (E.D. Ark. Aug. 2, 2019) ("The costs requested by Plaintiffs are costs that a law firm would normally bill to their clients and the Court finds them to be reasonable.").

### III.  CONCLUSION

Plaintiff is entitled to an award of reasonable attorneys' fees. In this memorandum, the Court should award Plaintiff $364,701.67 in fees and $8,262.68 in non-taxable expenses and for all other proper relief.

Dated: July 2, 2020                Respectfully Submitted,

/s/ Will Crowder
Will T. Crowder
WILLIAM T. CROWDER, PLLC
1101 Garland Street
Little Rock, AR 72201-1214
Phone: (501) 374-1058
Fax: (501) 374-2222
willcrowder@thrashlawfirmpa.com

Nicholas A. Migliaccio
Jason S. Rathod
MIGLIACCIO & RATHOD LLP
412 H Street N.E., Ste. 302
Washington, DC 20002-4336
Tel: (202) 470-3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com
***Attorneys for Plaintiff***

**CERTIFICATE OF SERVICE**

      I hereby certify that on Thursday, July 2, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

David M. Donovan
Staci Dumas Carson
WATTS, DONOVAN & TILLEY, P.A.
200 River Market Ave., Ste. 200
Little Rock, AR 72201-1769
david.donovan@wdt-law.com
staci.carson@wdt-law.com

                                                /s/ Will Crowder
                                                Will T. Crowder
                                                WILLIAM T. CROWDER, PLLC
                                                1101 Garland Street
                                                Little Rock, AR 72201-1214
                                                Phone: (501) 374-1058
                                                Fax: (501) 374-2222
                                                willcrowder@thrashlawfirmpa.com